[No. 17983.  Department One.  July 20, 1923.]

WILLIAM N. HAGER et al., Appellants, v. AGNES SCOTT et al., Defendants, AGNES SCOTT, Respondent.[1]

SALES (52, 62)—RESCISSION BY BUYER—FRAUD—RIGHT TO RESCIND —RELIEF IN EQUITY.  Where purchasers of a restaurant business in-duced by fraudulent representations elected to sue in equity for a rescission and a return of the purchase money, they are not entitled to a judgment against a third person who joined in the fraudulent representations, but was not interested in the property or the pur-chase price; since the same is not incidental to and did not grow out of the rescission.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered September 11, 1922, dismissing, as to one defendant, an action for rescis-sion, tried to the court.  Affirmed.

Winter S. Martin and Geo. McKay, for appellants.

H. A. P. Myers, for respondent.

BRIDGES, J.—By this suit plaintiffs sought to rescind the purchase of a restaurant because of fraudulent representations and to recover the purchase price paid.

The complaint, in substance, alleged that the de-fendants Agnes Scott and Elmer F. Scott were husband and wife, and that the defendant Moran was the mother of Mrs. Scott; that the defendants owned and operated a restaurant in the city of Seattle, called the Patricia Inn; that they first solicited the plaintiffs to purchase the undivided one-half interest of Scott

[1]Reported in 216 Pac. 840.

and wife, and as an inducement stated and represented to the plaintiffs that the restaurant had been and was making from $600 to $800 per month net, and that the one-half interest which they solicited plaintiffs to purchase had made, was making, and would continue to make, not less than $300 per month net; that plaintiffs had no experience in the restaurant business, and relying upon the representations made, purchased such one-half interest for a certain consideration paid in cash; that, within a month thereafter, the plaintiffs, wholly relying upon the representations made, as just mentioned, purchased the other one-half interest from Mrs. Moran, paying a part of the purchase price in cash and giving their promissory note and mortgage for the balance. It further alleged that all such representations were false and fraudulent, and that, as a matter of fact, the restaurant had not been, and was not at the time of the purchase, making any money whatsoever; but, on the contrary, had been operated at a loss, all of which was known to the defendants; that, not long after becoming the owners of the restaurant, the plaintiffs learned that the representations were false and fraudulent, and so notified the defendants and offered to reconvey the Inn to the defendants and to rescind the contract, demanding in consideration therefor the repayment of the amount of cash they had paid and the surrender and cancellation of their note and mortgage; that the defendants had refused to annul the sale or to rescind the contract or to pay back any part of the purchase price.

The defendant Agnes Scott answered, denying that she had any interest whatsoever in the Inn, or that she sold, or undertook to sell, any interest therein to the plaintiffs, and denied that she had made any of the alleged representations; Elmer F. Scott was not served

with process. The case was tried to the court without a jury. Judgment was entered dismissing the action against Agnes Scott and awarding judgment against Mrs. Moran in the sum of $6,951.20, and cancelling and annulling the note and mortgage. Plaintiffs have appealed from that portion of the judgment which refused them relief against defendant Agnes Scott; defendant Moran has not appealed.

The only question, therefore, is whether, under the testimony, the court should have awarded a judgment against Mrs. Scott. The testimony shows that she furnished, either directly or indirectly, a large portion of the money which went into the Inn and its operation. It appears that neither her mother nor husband had any considerable sums, while she had valuable property in her own right. All the defendants testified that Mrs. Scott had no financial interest whatsoever in the Inn, and that whatever money she furnished for it was in the nature of loans to her mother and husband. It would not serve any useful purpose to go farther into the detail of the testimony on this question. It must suffice for us to say that, after a careful examination of it, we agree with the conclusion reached by the trial court that, at the time of the sale, Mrs. Scott had no financial interest in the Inn and owned no part of it.

Having so concluded, it is our view that it is unnecessary to here discuss the other question involved, to wit; did Mrs. Scott make the false and fraudulent representations as charged. If it be conceded that she personally represented to the respondents that the Inn had been making and was, at the time of the sale, making a net profit of $600 and more per month, that appellants had a right to rely on these representations, and that they were made by respondent knowing them to be untrue; yet, it seems to us, no relief can be had

in this action against her. The action is one entirely in equity for the rescission of the contract of sale. By it the appellants seek to annul the sale and recover from the defendants the amount paid in cash on the purchase price, and to cancel the note and mortgage given by them. Mrs. Scott, not being the owner of any interest in the Inn, did not, of course, sell or convey to the appellants any interest therein. The only interests sold were those of Mr. Scott and Mrs. Moran. Mrs. Scott did not receive any of the purchase price. Therefore the sale cannot be rescinded as to her, and no return of the purchase price can be obtained from her, for she received none of it.

Appellants might have brought either one of two actions: one for the rescission and recovery of the purchase price, and the other, a suit for damages because of the false representations and the deceit resulting from them, retaining the property. They have brought the first kind of action. It is entirely in equity. The other, to wit, retaining the property and suing for damages, would have been one in law. Since we have concluded that Mrs. Scott did not own or sell any interest in the property, the only action that was maintainable against her was one, not for rescission, but for deceit. It is true, as often stated by the books, that, in an action to rescind, a plaintiff may recover not only the purchase price paid, but also such damages as are incidental to the rescission, such as the loss plaintiffs may have suffered in undertaking to hold or operate the property; but only incidental damages can be recovered in such an action. Equity, having obtained jurisdiction, will give complete relief by not only placing the parties in *statu quo,* but giving to the party defrauded such damages as incidentally and necessarily flow from the transaction. But such damages

·as appellants might recover in this suit against Mrs. Scott would not grow out of rescission nor be incidental thereto.

Having reached this conclusion, it necessarily follows that the judgment must be affirmed, whether respondent made the false representations or not. Judgment affirmed.

MAIN, C. J., MACKINTOSH, HOLCOMB, and MITCHELL, JJ., concur.